# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN J. GOMEZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>　　　　　Defendant. | 1:07cv0854 DLB<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS<br>(Document 20)<br><br>ORDER SETTING FURTHER<br>BRIEFING SCHEDULE |

## **BACKGROUND**

Plaintiff Kathryn J. Gomez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. On May 2, 2008, Defendant filed a motion to dismiss for lack of jurisdiction. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 24, 2007, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff began receiving disability benefits began in December 1983, when the Social Security Administration ("SSA") determined that her cardiomyopathy was disabling and granted benefits as of February 2, 1983. AR 15, 81-85.

On March 19, 2002, the SSA determined that Plaintiff's impairment had improved and that she was no longer disabled as of March 1, 2002. AR 110-113. Plaintiff requested reconsideration of this decision on May 8, 2002, arguing that her heart condition continued to keep her from working. AR 136-142.

On June 17, 2003, the SSA issued its notice of reconsideration, finding that Plaintiff's health had improved and that she was able to work. AR 209-211. In making its decision, the hearing officer considered evidence of Plaintiff's heart condition as well as evidence of her mental health. Specifically, the SSA determined that Plaintiff's heart condition had improved and her residual functional capacity ("RFC") had increased. The SSA also determined that Plaintiff's anxiety and depression with anxious mood were severe impairments, but she retained the RFC for simple tasks with no public contact. AR 213-223.

Plaintiff requested reconsideration on July 15, 2003, arguing that her anxiety and depression prevented her from working. AR 228-230. She requested a hearing on August 4, 2003. AR 232.

On May 27, 2004, Administrative Law Judge ("ALJ") Bert Hoffman held a hearing. AR 535-539. At the beginning of the hearing, the ALJ indicated that during an off-the-record discussion with Diana Wade, Plaintiff's representative, they decided to continue the hearing and allow Plaintiff to file a new application and "ask that the application be escalated to the hearing level" because of her ongoing continuing disability review. AR 537. The ALJ indicated that this would be the course of action if Plaintiff agreed, which she did. AR 537.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1         On June 21, 2004, Plaintiff filed a new application for Supplemental Security Income,
2  alleging disability because of anxiety, post traumatic stress disorder and depression. AR 419-422.
3         ALJ Hoffman held a hearing on December 16, 2004. AR 540. Prior to taking testimony,
4  Ms. Wade informed the ALJ that Plaintiff's heart condition had resolved and that the cessation
5  issues were now moot. Plaintiff formally withdrew her objection to the cessation of benefits and
6  indicated that the only issue was her June 2004 application. AR 544. ALJ Hoffman confirmed
7  that Plaintiff wanted him to proceed only on the June 2004 application, and then questioned
8  heard Plaintiff's testimony. AR 545-564.
9         On March 4, 2005, ALJ Hoffman issued his decision. He first explained that at the
10 hearing, he accepted Plaintiff's formal withdrawal of her objection to the cessation of her prior
11 benefits, and that the only issue remaining was whether Plaintiff was disabled based on her June
12 21, 2004, application. Although Plaintiff indicated that her disability started in the 1980s, the
13 ALJ assumed an onset date of March 1, 2002, the date her prior disability ceased. He found that
14 Plaintiff had the severe impairments of a history of congestive cardiomyopathy, dysthymia and
15 anxiety, but that she retained the RFC to engage in light work limited to simple, repetitive tasks.
16 AR 455-464.
17        Plaintiff requested review of the ALJ's decision on March 21, 2005. AR 465.
18        On August 4, 2005, the Appeals Council vacated the March 4, 2005, decision and
19 remanded the action to allow the ALJ to obtain additional evidence, further evaluate her mental
20 impairments, reevaluate her RFC and obtain evidence from a vocational expert ("VE"). AR 470-
21 472.
22        ALJ Hoffman held another hearing on March 14, 2006, AR 565-597. The questioning
23 focused on Plaintiff's current physical and mental issues, as well as her activities.
24        On May 18, 2006, ALJ Hoffman issued his decision. AR 15. Rather than address
25 Plaintiff's June 2004 application, however, ALJ Hoffman analyzed the cessation of benefits
26 issue. He therefore focused on Plaintiff's condition as of March 1, 2002, the date of cessation.
27 ALJ Hoffman determined that her cardiomyopathy had indeed improved and as a result, her RFC
28 had increased. AR 20. As to her dysthymia and anxiety, the ALJ found the impairments to be

severe as of March 1, 2002, but determined that as of that date, Plaintiff's mental impairments did not preclude her from performing simple, repetitive tasks. AR 21. He further explained that there were "other, later medical records in evidence indicating the claimant may have significant mental problems that have worsened since she was ceased from disability on March 1, 2002," but the severity and existence of mental impairments after March 1, 2002, were "not adjudicated by [the] decision." AR 18. ALJ Hoffman encouraged Plaintiff to file a new application "if the evidence indicates that the claimant's condition may have again become disabling subsequent to the cessation of her disability or that she has a new impairment." AR 15.

Not surprisingly, on May 24, 2006, Plaintiff requested reconsideration of the ALJ's decision. AR 533. She explained that ALJ Hoffman ruled on the cessation issues that were previously withdrawn and therefore failed to address any of the Appeals Council's instructions in the order of remand. AR 531.

On April 10, 2007, the Appeals Council denied Plaintiff's request for review. AR 6. It explained:

> "[T]he file does not show that you knowingly and voluntarily waived your right to a hearing concerning the cessation determination or that you amended your alleged onset date. Therefore, the Administrative Law Judge correctly considered the cessation issue in the decision, dated March 4, 2005. Your application of June 21, 2004 was a duplicate claim.

AR 6-9.

## DISCUSSION

In her opening brief, Plaintiff argues that, as an initial matter, the ALJ erred by applying the continuing disability analysis to her June 2004 application. Rather than addressing the opening brief on the merits, Defendant moved to dismiss the action. Defendant suggests that Plaintiff has not exhausted her remedies relating to her June 2004 application, and has therefore not received a final decision subject to this Court's review.

A.  Motion To Dismiss Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A plaintiff has the

4

burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, (1994). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the Court is whether the lack of federal jurisdiction appears from the face of the pleading. *Thornhill Publishing Co. v. General Telephone Electronics*, 594 F.2d 730, 733 (9th Cir. 1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992).

B.   Exhaustion Requirement

Section 405 governs judicial review of final decisions denying claims under Title XVI of the Social Security Act and provides in pertinent part:

> (g) Judicial Review. Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . .
>
> (h) Finality of Commissioner's decision. . . . No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405.

In claims arising under the Act, judicial review is permitted only in accordance with section 405(g). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 244 (1940). "Sovereign immunity is jurisdictional in nature." *Meyer*, 510 U.S. at 475. The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1983). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Where a statute creates a right, including a right to sue, and provides a special remedy, "that remedy is exclusive." *United*

1  *States v. Babcock*, 250 U.S. 328, 331 (1919). As such, Section 405(g) is the exclusive
2  jurisdictional basis for judicial review of cases arising under the Act.
3  	Section 405(g) "clearly limits judicial review to a particular type of agency action, a 'final
4  decision of the Commissioner of Social Security made after a hearing.'" *Califano v. Sanders*, 430
5  U.S. 99, 108 (1977). The term "final decision" is undefined by the Act and "its meaning is left
6  to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 767
7  (1975). The regulations, in turn, provide that a claimant must complete a four-step
8  administrative review process to obtain a judicially reviewable final decision. 20 C.F.R. §§
9  404.900(a), 416.1400(a).
10 	An initial determination is binding unless a claimant requests reconsideration. 20 C.F.R.
11 § 404.905. If the claimant proceeds to a hearing before an ALJ, the ALJ's decision is binding if a
12 claimant does not seek Appeals Council review. *See* 20 C.F.R. §§ 404.955 and 416.1455. If a
13 claimant seeks Appeals Council review, the Appeals Council may deny the request, making the
14 ALJ's decision final, or review the case and make a decision. 20 C.F.R. §§ 404.967, 404.981.
15 The Appeals Council's decision, or the ALJ's decision if the request for review is denied, is
16 binding unless an action for federal district court review is filed within 60 days after receiving
17 notice of the Appeals Council's action. 20 C.F.R. § 404.981; *see* 20 C.F.R. 422.210. Under the
18 regulations, a judicially reviewable final decision is available only if the claimant completes the
19 administrative review process and receives either an Appeals Council decision or an Appeals
20 Council notice that it denies a request to review the ALJ's decision. 20 C.F.R. §§ 404.981,
21 422.210.
22 C.	Analysis
23 	Defendant's motion is based on the premise that a "final decision" necessarily includes an
24 initial determination and a decision on reconsideration. Because Plaintiff's June 2004
25 application was first adjudicated by the ALJ during the December 2004 hearing, Defendant
26 suggests that she has failed to exhaust her administrative remedies and as a result, the ALJ's
27 decision is not final and reviewable. In opposition, Plaintiff argues that the initial determination
28 and reconsideration on the cessation of benefits issue should suffice for exhaustion purposes

because it contemplated all five steps of the sequential evaluation process.  Alternatively, Plaintiff contends that escalating subsequent applications to the hearing level is "well known" and is an "accepted method of adjudicating such dual applications."  Plaintiff's Opposition, at 5.

The procedural history of this action is unique and compels only one result.  Although Defendant urges the Court to find that Plaintiff essentially failed to take affirmative steps to exhaust her claim, the Commissioner's treatment of her administrative action precludes such a determination.

The record demonstrates that Plaintiff followed the lead of the SSA in moving her June 2004 application directly to the hearing level.  At the May 27, 2004, ALJ Hoffman stated,

> In an off-the-record discussion with your representative, it's been discussed that we're gonna continue this case, and then in the meantime, you were going to [ ] file a new application.  A new SSI application and ask that the application be escalated to the hearing level.  Moved up to hearing level because you already have a continuing disability review case before the Court and for reasons that your representative agrees with is a good idea, we're gonna do that if that's okay with you.

AR 537.

Plaintiff agreed, and the ALJ stated, "All right.  Then that's what's gonna happen."  AR 537.  A few sentences later, he explained that when the "application is in our office, then I will work with Ms. Wade to, to quickly set this matter for hearing."  AR 538.

Pursuant to the discussion at the hearing, Plaintiff filed a new application for benefits in June 2004.

The next procedural action on the June 2004 application is the December 16, 2004, hearing.  Prior to taking Plaintiff's testimony, the following conversation took place:

> Ms. Wade: I'm tell[ing] you that I think the onset date of the CVR continued disability cessation issues are moot at this point and that the SSI application that's been previously, [inaudible], subsequently filed is the only thing that is at issue at this point.  She's not receiving benefits.
>
> ALJ: Okay.  Well, I mean, I mean, so I understand you're formally withdrawing your objection to the cessation.
>
> Ms. Wade: Yes.
>
> ALJ: Okay.  So that will be noted.  All right.  And so what we're here on is an application having been filed on 6-21-04 and, and that's the way you want me to review the case.  Is that what I understand?

7

|   |   |
|---|---|
| Ms. Wade: | That's right.  That's right, sir. |

AR 544-545.

ALJ Hoffman issued his decision on March 4, 2005.  He explained:

> At the hearing, claimant formally withdrew her objection to the continuing disability review determination, ceasing her payments as of March 1, 2002.  The undersigned accepted said withdrawal.  As such, pursuant to 20 C.F.R. § 416.1457(a), claimant's request for a hearing on the issue of a continuance of supplemental security income is hereby dismissed and the previous determination remains in effect.
>
> Therefore, the only remaining issue is whether claimant is disabled based on her application, dated June 21, 2004, under Title XVI of the Social Security Act, and if so the duration of her disability.  Although the claimant alleged in her current application that her disability started in the 1980's and because she formally withdrew her objection that her disability ceased March 1, 2002, the period before the undersigned to be adjudicated is from March 2, 2002 to date.

AR 458.

ALJ Hoffman ultimately denied Plaintiff's June 2004 application and she sought review from the Appeals Council.  On August 4, 2005, the Appeals Council vacated the hearing decision and remanded the action back to the ALJ.  Its rationale for doing so demonstrates that it did not object to the ALJ's "escalation" of the June 2004 application directly to the hearing level.  Without questioning the application's procedural route or the ALJ's authority, the Appeals Council simply vacated and remanded based on the merits of the ALJ's underlying decision.  AR 470.  On remand, the ALJ was instructed to obtain additional evidence concerning Plaintiff's impairments, further evaluate her mental impairments, further consider her RFC, and obtain evidence from a VE.  AR 471-472.

Pursuant to the remand order, ALJ Hoffman held another hearing on March 14, 2006.  AR 565.  Plaintiff's representative and the ALJ questioned Plaintiff regarding her current activities and abilities.  AR 568-597.

On May 18, 2006, ALJ Hoffman issued the decision that is the focus of this action.  Inexplicably and contrary to his prior actions and those of the Appeals Council, he altered the course of the proceedings and shifted back to Plaintiff's cessation of benefits issue.  He made no mention of Plaintiff's June 2004 application and "encouraged" Plaintiff to file a new application "if the evidence indicates that the claimant's condition may have again become disabling

subsequent to the cessation of her disability or that she has a new impairment. . ." AR 15. He found that there were "other, later medical records in evidence indicating the claimant may have significant mental problems that have worsened since she was ceased from disability on March 1, 2002," but he did not consider this evidence because "the existence of any mental impairments that existed after March 1, 2002, and the severity of such impairments, are not adjudicated by this decision." AR 18.

Plaintiff requested review of this decision, explaining that ALJ Hoffman ruled on the cessation issues that were previously withdrawn and therefore failed to address any of the Appeals Council's instructions in the order of remand. AR 531. In its April 10, 2007, order, the Appeals Council, for the first time, suggested that the procedure was flawed:

> "[T]he file does not show that you knowingly and voluntarily waived your right to a hearing concerning the cessation determination or that you amended your alleged onset date. Therefore, the Administrative Law Judge correctly considered the cessation issue in the decision, dated March 4, 2005. Your application of June 21, 2004 was a duplicate claim.

AR 6-9.

Based on the record before the Court and Plaintiff's reliance on SSA action at more than one administrative level, the Court finds that Plaintiff has exhausted her administrative remedies for the June 2004 application. The ALJ suggested that Plaintiff file a new application and indicated that the new claim would be escalated to the hearing level, and indeed, it was. He then issued a decision based solely on the June 2004 application and expressly noted that Plaintiff's objection to the cessation issue was formally withdrawn. The Appeals Council then reviewed the decision on the merits and raised no objection to the ALJ's procedural actions. The SSA therefore moved Plaintiff's June 2004 application through the administrative review process and Plaintiff should not be faulted for her reliance thereon. That her application went directly to a hearing and bypassed lower levels of review will not preclude a finding of exhaustion under the facts of this case.

**CONCLUSION AND ORDER**

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

Defendant SHALL file an opposition to the merits of Plaintiff's opening brief within thirty (30) days of the date of service of this order. Plaintiff's reply, if any, is due within fifteen (15) days of being served with Defendant's opposition.

IT IS SO ORDERED.

Dated:   **June 26, 2008**                    **/s/ Dennis L. Beck**
                                                              UNITED STATES MAGISTRATE JUDGE